UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

_____

)

ABDELGADIR ABOEID, MONA        )

ABDELGADIR, AND                )   Civil Action Number 1-10-CV-2518

ABDELGADIR ABOEID ON           )           (WFK II)      (VVP)

BEHALF OF HIS SEVEN            )

MINOR CHILDREN,                )   Hon. William F. Kuntz II

              )

    Plaintiffs,        )

v.                             )

              )   Plaintiffs' Trial Brief

              )

              )

SAUDI ARABIAN AIRLINES,        )

 INC.,                        )

    Defendant.         )

_____)

**PLAINTIFFS' TRIAL BRIEF**

Plaintiffs hereby respectfully request that the Court take note of the facts, argument, points and authorities in this Trial Brief.

I.  Introduction.

This trial brief does not repeat all of the facts, law and evidence presented in Plaintiffs' Motion for Summary Judgment which has yet to be ruled upon. Rather, it highlights key facets of the case which Plaintiffs respectfully request the Court to consider during trial that Plaintiffs consider important in assessing evidence, the allegations and damages. First Plaintiffs will

present a brief factual recital. The Plaintiffs' motion for summary judgment is hereby incorporated by reference. Then Plaintiffs will address the Defendant's complete lack of percipient evidence. Plaintiffs will highlight the actions and behavior of Defendant justifying liability on all causes of action in the complaint, and address damages. Finally, Plaintiffs will identify evidentiary issues that need to be addressed from Plaintiffs' motion in limine which has yet to be ruled upon.

II. Brief Factual Recital

      The evidence will show the following:-

The nine Plaintiffs are U.S. citizens. The parents escaped Sudan's civil war and are naturalized. The children were all born in Greensboro, NC. At the time of the family's travel one child was an infant and the Mother was pregnant with the eighth child. The family purchased travel on Saudi Arabian Airlines from JFK to Khartoum and return, to see relatives. The itinerary was JFK-Riyadh-Khartoum on the outbound and Khartoum-Jeddah-JFK on the return. The scheduled return trip included a stop in Jeddah from 21 to 24 July 2008. The contract and tickets are appended as an Exhibit to the Complaint. Plaintiffs fully performed all of their obligations to the ticket contracts. The only condition to Defendant's obligation to perform its contracts with Plaintiffs was:

> "11. The passenger shall comply with all government travel requirements and arrive at the airport by the time fixed by Saudi Arabian Airlines or if no time fixed, sufficiently in advance of flight departure to permit completion of government formalities and departure procedures. Saudi Arabian Airlines is not liable for loss or expense due to passenger's failure to comply with this provision." See, Exhibit C to First Amended Complaint, page 4.

On departure at JFK the family was segregated and separated from the first come, first served counters of Defendant in violation of Company policy for about two hours. In litigation, the Defendant attempted to develop various pretexts for this activity, such as baggage, no-fly lists and the like, but none were established. Despite a litigation hold Mr. Fearon admitted to the Magistrate in writing he'd lost the security list, a document that earlier Mr. Fearon had shown with his client to the employee Haradan, who then testified he'd seen the list. The list would establish the family was subject to no hold at check-in, and were boarded last in violation of

company policy. The family were embarrassed, upset and made to feel like second class citizens by their segregation and delay over their nearly first place in line at JFK.

On return to the U.S.A. the family was denied boarding at Jeddah. The passenger in front of them was boarded, and the passenger behind them was boarded, but the family of nine was not. At a hearing before this Court, counsel to the Defendant admitted that the aircraft was oversold and there were only three seats remaining for the family of nine. The record reflects that no non-revenue passengers were removed, as is company policy when an aircraft is oversold. Because the airline defendant boarded the individual arriving at the New York flight counter after the family arrived, it is obvious the family, who arrived prior to the last passenger boarded, arrived on time and complied with their contract. In denying the family boarding, thereafter the Defendant failed to follow its own company policy as to the benefits available to passengers who are denied boarding, including food, shelter and telephone access, until the passenger is boarded and the itinerary resumed. The Defendant also failed to promptly re-route the family home, one way or another, according to company policy. The family spent 13 days sleeping in the airport, with an acquaintance and in a hotel, or 113 person-days in total. The family relied upon friends and a loan to purchase tickets on another carrier to get back to JFK. The family was nearly arrested and incarcerated due to the failure of Saudia to renew and extend their transit visas after boarding was denied.

During the 13 days the postal worker and his family were abandoned, Abdelgadir Aboeid traveled to the airport daily for assistance in rebooking. At various times on these excursions he was told only a black Sudanese man in another office could help him, he was the recipient of racist epithets from Saudia staff, including Arabic words for slave and zebra (being the only horse a human being cannot domesticate), and on one occasion he was told he would have to abandon some of his children to a later flight in order to get home to JFK. The entire family knew of these events and in a few cases they also witnessed them to much dismay.

Since the eyewitness testimony is exclusively that there was a passenger arriving at the departure area for New York *after the family, and he was in fact accommodated*, there can be no legitimate argument the family did not arrive on time for departure. The Defendant's own admission before this Court and its own business records tell the truth: the plane was oversold with non-revenue staff and royal dignitaries, and the family of nine was left behind as there were

only three seats left. Thereafter, the Defendant failed to observe its own policies and a reasonable standard of care to return the plaintiffs to their destination.

This interpretation of the facts is substantiated by the Plaintiffs' expert Michael Feldman, who spent more than 20 years in charge of passenger relations at IATA dealing with passenger rules, ticketing rules and was the leader of the team that invented the e-ticket. He will testify that the airline denied boarding to the plaintiffs, treated them at variance from Company policy at JFK and in Jeddah, and breached its duty of care to the Plaintiffs by abandoning them half way around the world from home. The expert Toby Jones will testify as to the racial epithets and abandonment as being linked to and a function of the manner in which blacks with no Saudi tribal connection in Saudi Arabia are treated. The expert Denise Pastoor will testify as to the effects of abandonment upon the family, the pain and suffering, the ensuing medical issues and indicated treatment, and cost. She will testify it is difficult to know for sure how long treatment will be required and could last ten years.

If Saudia is to be believed, they are free and entitled to abandon a family of nine halfway around the world from home, without any real reason for doing so. In fact, the company witness Ms. Jacoby indicated she never abandoned passengers and that it was not company policy to do so. The defendant admitted the plane was oversold. They lied to the Plaintiffs, their Congressman and the DOT about having no records for the family when the family complained after return home, and then produced over a thousand pages of family data in discovery. If they seek to continue doing business in the U.S.A. at JFK, then they should be held accountable for their actions and behavior under U.S. and New York law.

III. Defense Has No Percipient Testimony or Evidence

The defense has not identified in response to interrogatory request a single percipient witness who recalls anything whatsoever about the family check in at JFK, the plaintiffs' arrival at the departure counters for New York in Jeddah, or the family's thirteen day delay in Jeddah for 113 person days, during which a pregnant mother was forced to sleep on the floor of a mosque with an infant who was ill. No one was identified by defendant from its stations at JFK, Jeddah, the numerous offices Abdelgadir visited to find carriage home, no one from defendant's staff has been presented as a witness. Sevan Jacoby admitted she was not present for any of the

4

events the family complains of at JFK. Samy Baqader admits he has no personal knowledge whatsoever of any facet of the case. He is unable to authenticate the document he used at his deposition to claim the Aboeid family arrived late at the departure counters of Defendant in Jeddah. As quoted in the Summary Judgment motion, Mr. Baqader has no personal knowledge of anything involved in this case. Presumably, the airline knows who was where and staffing each spot at the airports at all relevant times of the family's travel, but has decided not to produce this information. Probably they failed to identify these individuals because it would be detrimental to their case.

IV. Actions Justifying Defendant's Liability

    <u>A. Breach of Contract and the Duty of Care of a Common Carrier</u>

    Every common carrier has a duty of care owed to its contractual passengers to protect them from the risk of physical harm. *Bethel v. N.Y. City Transit Authority*, 92 N.Y. 2d 348 (N.Y. 1998). The duty of reasonable care includes a duty to provide care and comfort for passengers in the event of injury until another assumes responsibility. *Farash v. Continental Airlines, Inc.,* 574 F.Supp 2d 356, 367 (SDNY 2008). The duty of care in New York raises to the standard of what a reasonable person would expect Saudia to do in the circumstance where it denied boarding to a family of nine half way round the world from home. The duty arises in every conceivable context between a common carrier and its passenger. *Id. See also,* Restatement of Torts 2d Section 314A.

    Saudia owed a duty of care, consistent with its own guidelines, rules and policies, to attend to the needs of the Plaintiffs after they were denied boarding. Even if the family failed to appear on time at the Jeddah departure, the airline's company representative testified that the airline would not abandon a passenger without food and shelter. Yet that is exactly what defendant did. Because a reasonable person would find Saudia's actions abhorrent, in abandoning a family after denying them boarding, in violation of their own policies and common decency, the Court should determine that Saudia breached its duty of care under nine agreements for 113 person-days to the Plaintiffs.

    <u>B. Section 1981 and New York's Human Rights Law</u>

Both provisions were violated by Defendant's actions at JFK. *See, Brown v. Oneonta*, 221 F.3d 329, 339 (2d Cir.1999). Accord, *General Bldg. Contractors Ass'n Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1981) (stating that section 1981 requires proof of

5

purposeful discrimination).   *Hawkins v. County Of Oneida, N.Y.*, 497 F.Supp.2d 362 (2007). When considering the requirement of purposeful discrimination, a plaintiff may use any evidence that logically supports an inference of discrimination because defendants who discriminate are unlikely to leave a "smoking gun" exposing their discriminatory animus. *Desert Palace, supra*.

    The icing on the cake is that unlike just about every other major organization doing business in the U.S.A., Saudia admitted in interrogatories that prior to the events of this case it had not trained any of its personnel in the elements of anti-discrimination law in the U.S.A., and upon information and belief, that situation has not changed. The defendant's F.R.Civ.P. 30(b)(6) representative Sevan Jacoby confirmed this continues to be the case. This together with the frequency of duty of care and discrimination issues at Saudia serves as the basis for a claim founded on  liability against Defendant for negligent failure to train. *City of Canton v Harris*, 489 U.S.  378 (1989), and *Walker v. City of New Y*ork, 974 F.2d 293 (2d Cir. 1992). Saudia's F.R.Civ.P. 30(b)(6) witness admitted there is no training program addressing U.S. constitutionally protected civil rights, and so Saudia's deliberate indifference to U.S. constitutional protections preventing racial discrimination seems plain, obvious and acute. There have been eight cases of racial discrimination brought against Saudia in the Philippines, and several others in the USA. The plaintiffs' expert Michael Feldman will address this absence of training when compared to the market at large.

    The family's evidence is that they were restrained from moving by a Saudia employee for two hours, and the children became embarrassed, so did the parents, and some of the children cried. The parents claimed to feel embarrassed and like 2nd class citizens. They were scared. This type of segregational reaction with embarrassment, fear and disappointment is recognizable as injury in a racial discrimination case. See, Restatement (Second) Of Torts § 905 comment. i ("[T]here is no rule of certainty with reference to the amount of recovery permitted for any particular type of emotional distress; the only limit is such an amount as a reasonable person could possibly estimate as fair compensation."); see also Carpenter, 95 F.E.O.L 3229, at XII-147 ("[D]amage awards for emotional harm are difficult to determine and ... there are no definitive rules governing the amount to be awarded in given cases.").  See Civil Rights Act of 1991, Pub. L. No. 102-166, § 3(1), 105 Stat. 1071, 1071 (stating as one of Act's purposes "to provide appropriate remedies for intentional discrimination …"). The Plaintiffs believe the employment discrimination awards set with reference to the number of employees of the discriminating actor

in recent amendments to the civil rights laws are acceptable guidelines for damages under Section 1981 and would indicate an award of up to $300,000 for each Plaintiff for each claim of proven discrimination on a compensatory basis.

### C. The Transportation Code

The Transportation Code has long been interpreted as providing a private right of action for discrimination by a foreign air carrier against U.S. resident passengers. The jurisdiction extends to flights returning to the U.S.A. 49 USCA 40127; *Farash v. Continental Airlines, Inc.,* 574 F.Supp.2d 356 (S.D.N.Y.2008); affirmed 337 Fed.Appx. 7, 2009 WL 1940653. The evidence will show that the family was ill-treated in violation of company policy upon their attempt to return to the U.S.A. by a foreign air carrier, and are members of a suspect class. They were refused the right to travel home to the U.S.A. in violation of the denied boarding policy of Saudia, as well as duty of care benefits like food and shelter. The family was injured by their abandonment and subjected to horrific treatment. Since Transportation Code cases look to Sections 1981 and 1983 for analysis, the three step approach of those sections applies here: Plaintiffs are members of a suspect class; they were treated in violation of company policy; and were damaged. A violation of the Transportation Code took place. The Plaintiffs accept the guidance from Title VII to establish compensatory awards for these violations of federal law by the number of employees at Saudia, in excess of 500, and justifying an award of $300,000 in compensatory damages for each Plaintiff.

### D. Good Faith and Fair Dealing

Plaintiffs accept the proposition that New York does not countenance a separate cause of action for breach of the rule embodied in Restatement of Contracts 2d, Section 205. Generally it is considered in New York a basis upon which to assess for analysis of breach the exercise of a discretionary contract right, say for example, a claim that the discretionary right to terminate was done in bad faith, resulting in a claim for breach. However, because the actions of the Defendant and its counsel in this case were so outrageous and so clearly violated this maxim, the Court should consider the actions of defendant in prolonging, complicating and just plain outright misstating the facts in this proceeding, when addressing statutory counsel fees under Section 1981, and other provisions that do not allow fees which are relevant here.

To demonstrate evidence of bad faith, Plaintiffs show the following to the Court:-

1. Defendant and its counsel misled DOT, a Congressman and the Plaintiffs about the Company's knowledge of the Plaintiffs' travel and their predicament, when in fact they knew all about it and were addressing lost luggage claims simultaneously.

2. Defendants and their counsel lost the security list after a litigation hold.

3. Defendants deny all of the allegations of the complaint, but have no percipient testimony actually to do so. Such denials are patently in bad faith.

The result of the foregoing should be to affect the Court's sensitivity to the amount of damages sought for pain and suffering, as well as damages recoverable under Section 1981, punitive damages and legal fees.

V. Damages

Using the guidelines, facts and authorities indicated above and in the Plaintiffs' motion for summary judgment, the Plaintiffs previously provided to the Court with proposed jury instructions their calculation of damages.

First, here is an analysis of previously decided cases where passengers were abandoned by an air carrier. The unreported case with an unnamed carrier was negotiated and settled with Defendant's lawyers in this case. Plaintiffs could find only two such cases. Here is a comparison of this case's attributes with other reported or known cases in order to reach a reasonable settlement.

# PLAINTIFFS   #OF DAYS ABAND.   RACE CLAIM?   SPECIAL CIRCUMSTANCES   TOTAL AWARD

Zuliana de Aviacion v. Maria Herrera et al., 763 So. 2d 499  (3rd Dist Ct of Appeal, Fl. 2000)

2                         2               NO                Subjected to a strip search
$5 million                                                  Abandoned en-route
                                                            Finally brought them home

Unreported decision in the Eastern District of New York

1                        13               NO                airline fabricated story and
                                                            refused carriage to US

|  |  |  |  |
|---|---|---|---|
| $6 million[1] | | | diplomat; smoking gun e mail |
| | | | Finally brought them home |
| This case | | | |
| 9; Plaintiffs | 13 | YES | staff used racial epithets |
| Suggest a lesser | or | 3 for each | Refused to act in good faith, |
| Award than prior | 113 total | Of 9 Pfs. | Mgmt. Failed to educate staff |
| Cases, at $265,000 @ | Person days | | Failed to assistplaintiff |
| person | abandoned | | refused to bring them home |

As for the racial discrimination, Federal Transportation and NY Executive Law Section 296 claims, using the employer respondent size under Sec. 1983 as a talisman for the award, Saudia has more than 500 employees and so the compensatory award for each claim should be $200,000 to 300,000 for each Plaintiff or up to $900,000 total for each Plaintiff for these three claims, before punitive damages are assessed. Punitive damages should be awarded because when viewed in totality, defendant's disregard for the welfare of the Plaintiffs, which in its previously filed damage calculation last week, Plaintiffs asked for $850,000 each for the three discrimination claims before awards for punitive damages, legal fees and civil damages to New York State. In addition, violation of the N.Y Human Rights Law requires Saudia to abandon N.Y. State as a place of business. Plaintiff hereby incorporates by reference its previously ECF-filed damages demand which totaled $70 million for the nine defendants, the three causes of action for racial discrimination, 113 person days of abandonment without care, and punitive damages, exclusive of legal fees.

VI. Evidentiary Issues

Plaintiffs incorporate by reference their Motion in limine and supporting memorandum, which fully address all of the evidentiary matters Plaintiffs consider relevant.

---

[1] This number was significantly reduced to $300,000 after the Magistrate Judge was advised the Plaintiff had allegedly perjured himself in the case about an extraneous matter, unknown to Plaintiff's counsel at the time.

9

VII. Conclusion

      The plaintiffs are entitled to a judgment on all counts in the amended complaint and to the extent the proof goes beyond the pleadings.

      Respectfully submitted,

      /s/

Thatcher A. Stone
Counsel to the Plaintiffs
45 Rockefeller Plaza
NY NY 10111
Phone: 212 332 2477
thatcher@thatcher-stone-legal.com